Michael BELKNAP et al., Plaintiffs-Appellees,

v.

Howard R. LEARY, Police Commissioner of the City of New York, Inspector Harold Schryner et al., Joseph Inserra, Thomas Woodford, Robert Kesinger, Larry Tallman et al., Defendants-Appellants.

No. 883, Docket 34957.

United States Court of Appeals, Second Circuit.

Argued May 29, 1970.

Decided May 29, 1970.

Burt Neuborne, New York City, New York Civil Liberties Union.

Morton P. Cohen, Brooklyn Legal Service Corp B, South Brooklyn Branch.

Mary M. Kaufman, New York City, National Lawyers Guild, for plaintiffs-appellees.

J. Lee Rankin, Corp. Counsel, City of New York, for defendants-appellants.

Before LUMBARD, Chief Judge, and FRIENDLY and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge:

On May 27, 1970, plaintiffs asked Judge Motley in the District Court for the Southern District of New York, to issue, without notice to defendants, an order in an action instituted by plaintiffs under the Civil Rights Act, 42 U.S.C. § 1983, to restrain the Police Commissioner of New York City and his subordinates from failing to accord protection against physical harm at any legally constituted public demonstration over the Memorial Day weekend. The judge directed the plaintiffs to notify the defendants to appear at 3:00 P.M. that day. On May 28 she issued an order restraining the Police Commissioner, a named inspector, and all the other inspectors, captains, lieutenants, sergeants, and police officers of the City from:

"1) failing to protect plaintiffs and members of their class, while engaged in the peaceful and orderly exercise of their constitutional right to protest present Government war policies, from

physical assaults and threats of physical assaults on May 29, 30, 31, 1970;

2) failing to guarantee to these plaintiffs and members of the class they represent proper and adequate police protection while said plaintiffs and members of their class are engaged in exercising their constitutional right to meet and assemble in a peaceful and orderly manner and protest against the Government's war policies on May 29, 30, and 31, 1970;

3) refusing or failing to take all reasonable precaution and means to protect plaintiffs and others similarly situated from acts of violence or other interference with the exercise of their right to peacefully assemble and protest present Government war policies on May 29, 30, and 31, 1970."

The order was to apply only to demonstrations of which the Police Department had prior notice. The court further directed that the order "be read or otherwise conveyed by the Police Commissioner, or his designated deputy, to every member of the Police Department who will be on duty on May 29, 30, 31, 1970." In view of the urgency as to time we heard the defendants' appeal on an expedited basis.

■ ■ We are met at the outset by a question of our appellate jurisdiction. The order is not a final decision under 28 U.S.C. § 1291, and the grant or denial of a temporary restraining order is generally not appealable as the grant or denial of an injunction under 28 U.S.C. § 1292(a) (1). Grant v. United States, 282 F.2d 165 (2d Cir. 1960). However, "in applying this distinction the label put on the order by the trial court is not decisive." Wright, Federal Courts 459 (2d ed. 1970). Unlike most temporary restraining orders, the one here under appeal is essentially affirmative. We regard it as a mandatory injunction, appealable under 28 U.S.C. § 1292(a) (1), even though it is of short duration.

■ Responsibility for protecting the people of the City of New York in the exercise of their First Amendment right "peaceably to assemble and petition the Government for the redress of grievances" rests in the first instance on their elected Mayor and his designee, the Commissioner of Police. Proper discharge of that duty is not likely to be enhanced by a necessarily vague order from a federal judge, which the Commissioner is commanded to read or otherwise convey to the men and women on his force, with the attendant threat of contempt proceedings if their conduct falls short of what the judge thinks proper. Responsibility, as Mr. Justice Brandeis once said, "is the great developer of men." St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 92, 56 S.Ct. 720, 744, 80 L.Ed. 1033 (1936) (concurring opinion).

■ Plaintiffs' argument for a departure from these principles hangs almost entirely on alleged gross neglect by a number of police officers during the deplorable events of May 8, 1970, when a group of construction workers assaulted anti-war demonstrators in downtown New York. They say this created an atmosphere of intimidation which nothing but a federal injunction can cure.

If there had been a continuation of police failure to protect anti-war demonstrators, such as the judge was justified in thinking had occurred on May 8, or even if City officials had done nothing about the incident, plaintiffs' case might have merit. But the facts are to the contrary. On May 9 Mayor Lindsay issued a statement characterizing the previous day's violence as "appalling" and saying that what was "most appalling" was "that the people of this city witnessed a breakdown of the police as the barrier between them and wanton violence." He added that the Police Commissioner and the Department's high command were equally disturbed "by failures of police performance," that an investigation had been started, and that other corrective procedures were being initiated. Even before that the Commissioner had issued a statement emphasizing the policy of the Department "to provide protection of the safety of those exercising their rights

of free speech." The Department has had guidelines on the handling of mass demonstrations since September, 1969; a revised version of these which emphasizes the duty of the police to protect the peaceful exercise of the rights of free speech and assembly is about to be promulgated.

Indeed, at the argument before us plaintiffs' counsel affirmed confidence in the Mayor and the Police Commissioner but expressed doubt whether these high officials could get their views through to the force without assistance from a federal injunction. We perceive no basis for this fear.

The authorities mainly relied on by plaintiffs dealt with quite different facts. In Cottonreader v. Johnson, 252 F.Supp. 492 (M.D.Ala.1966), the court found that the defendants, including the Mayor and the Chief of Police, over a period of months had themselves intimidated and harassed the plaintiffs as well as permitting other citizens to intimidate, threaten and assault them. In Houser v. Hill, 278 F.Supp. 920 (M.D.Ala.1968), the court found that for several months the police had not only failed to provide proper protection for black citizens but had committed several sorts of affirmative misdeeds. The injunction in Lankford v. Gelston, 364 F.2d 197 (4th Cir. in banc, 1966), was directed against an instance of large scale police violation of the Fourth Amendment which, as the court found, "on a smaller scale has routinely attended efforts to apprehend persons accused of serious crime." 364 F.2d at 201. The very statement of these cases shows their inapplicability to a situation involving a single although grave failure by the police to discharge their responsibilities, followed by speedy criticism and the taking of corrective measures by the Mayor and the Police Commissioner. The apparent effectiveness of their action seems to have been shown by the handling of two major demonstrations, one pro-war and one anti-war, since May 8. There is thus no basis at present for any reasonable citizen to assume that these measures will be ineffective so that he must refrain from exercising his First Amendment rights to protest peaceably against the war—or anything else.

We therefore vacate the order as an abuse of discretion. The mandate shall issue forthwith.