480 F.2d 293
 1973-1 Trade Cases 74,494
 INTERNATIONAL BUSINESS MACHINES CORPORATION, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
INTERNATIONAL BUSINESS MACHINES CORPORATION, Petitioner-Appellant,
v.
Hon. David N. EDELSTEIN, Chief Judge of the United States
District Court for the Southern District of New York,
and
United States of America, Respondents-Appellees.
 Nos. 363, 364, Dockets 72-2106, 72-2107.
 United States Court of Appeals,
Second Circuit.
 Submitted to the en banc Court. March 1, 1973.
Decided May 8, 1973.
 
 Frederick A. O. Schwarz, Jr., New York City (George Vradenburg, III, Cravath, Swaine & Moore, New York City, and Nicholas deB. Katzenbach, Armonk, N. Y., of counsel), for petitioner-appellant.
 Howard E. Shapiro, Atty. Department of Justice, Washington, D. C. (Thomas E. Kauper, Asst. Atty. Gen., Department of Justice, Washington, D. C., of counsel), for respondents-appellees.
 Before MOORE, HAYS, FEINBERG, MULLIGAN, OAKES and TIMBERS, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 After a divided panel opinion in this case was filed (the majority and dissenting opinions appear in 471 F.2d 507 (2d Cir. 1972)) a petition for rehearing en banc was granted. Both International Business Machines Corporation (IBM) and the United States of America thereupon submitted additional briefs.
 
 
 2
 IBM is the defendant in a civil antitrust action brought by the Government in the United States District Court for the Southern District of New York (the New York action). IBM is also defending a number of private antitrust suits which had been consolidated in the United States District Court for the District of Minnesota before Judge Philip Neville under the Multidistrict Litigation Act (28 U.S.C. Sec. 1407 (1970)). The case which precipitated the controversy here was Control Data Corp. v. IBM which is referred to as the CDC action.[1] The Government has not been a party to any of the Minnesota actions.
 
 
 3
 The present Appeal and Petition for Extraordinary Writ (28 U.S.C. Sec. 1651; Fed.R.App.P. 21) are addressed to an order in the New York action (Pretrial Order No. 5) made by Chief Judge Edelstein on September 26, 1972. The order recited that IBM "in furnishing to plaintiff, United States of America, microfilm copies of documents in the course of pretrial proceedings . . . excised from the microfilm prior to delivering it to plaintiff copies of documents reproduced on said microfilm which constituted or contained allegedly privileged material, as to which excised documents IBM made the claim that such documents had been delivered to a third party, Control Data Corporation, through inadvertence on its part;" and that the Government "filed a motion in this Court dated April 7, 1972, calling for the production of the materials thus withheld and excised by IBM, plaintiff's ground being that the production of said documents to Control Data Corporation constitutes a waiver of all claims of privilege by IBM as to said documents . . . ." The order directed that "IBM immediately deliver to plaintiff, in the form provided to Control Data Corporation, a copy of each document withheld and excised by it from the said microfilm, all such documents purportedly being identified and described by Charles M. Waygood, attorney for defendant, in a letter addressed to plaintiff's counsel, dated April 4, 1972, a copy of said letter being attached to and made a part of this order."
 
 
 4
 The attack upon Judge Edelstein's order is essentially based upon two grounds: (1) IBM was directed by the Minnesota Court in a discovery proceeding in the CDC action to produce some 17 million document pages in three months. The production of such a massive amount of material made the inadvertent surrender of privileged documents inevitable. Judge Neville finally ruled on April 18, 1972 that the privilege had not been waived merely because the documents had been surrendered and examined by CDC. IBM claims that the order of Judge Edelstein rejecting the concept of inadvertent waiver, is in direct conflict with the order of Judge Neville which protected the right of IBM to claim the attorney-client privilege in the CDC action. (2) The Government violated an agreement made between its attorneys and IBM's whereby the Government abandoned its own discovery program in New York and agreed to accept an edited microfilm of documents already supplied to CDC by IBM. The excised material consisted of some 1200 documents which IBM considered privileged and inadvertently produced.
 
 
 5
 IBM argues that Pretrial Order No. 5 of Judge Edelstein should be vacated as an abuse of discretion and an usurpation of power, creating irreparable damage to IBM in violation of both the order of Judge Neville and in breach of the agreement between the parties. We hold that we have no jurisdiction to review the discovery order below either by appeal or by mandamus.
 
 
 6
 * The Expediting Act (15 U.S.C. Sec. 29) deprives this Court of jurisdiction to hear the instant appeal.[2] This statute explicitly provides that appeals in Government initiated civil antitrust actions, lie only to the Supreme Court from the final judgment of the district court. This is a civil antitrust action brought by the Government. The order is not final and this is not the Supreme Court. In construing the statute the Supreme Court has consistently held that interlocutory orders in these cases are appealable to neither court.
 
 
 7
 Mr. Justice Brandeis noted in United States v. California Coop. Canneries, 279 U.S. 553, 558, 49 S.Ct. 423, 425, 73 L.Ed. 838 (1929), that the Expediting Act "precluded the possibility of an appeal to either court from an interlocutory decree." This view has been followed in subsequent decisions of that Court and Circuit Courts ever since.[3]
 
 
 8
 The only conceivable escape provided by Congress from the Expediting Act was the Interlocutory Appeals Act of 1958 which allows an appeal from an interlocutory order if the district judge is of the opinion that the order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. Sec. 1292(b). The escape is not available here. Chief Judge Edelstein has declined to certify that a controlling question of law is involved. There is authority for his position.[4] Even if he had certified, the recent decision of the Supreme Court in Tidewater Oil Co. v. United States, 409 U.S. 151, 173-174, 93 S.Ct. 408, 421 (Dec. 6, 1972) squarely holds: "Hence, we conclude that Sec. 1292(b) did not establish jurisdiction in the Court of Appeals over interlocutory orders in Expediting Act cases. The exclusive nature of the jurisdiction created in Sec. 2 of the Expediting Act has consistently been recognized by this Court, and we hold today that that exclusivity remains unimpaired." (Emphasis added.)
 
 
 9
 The dissent seeks to avoid the Supreme Court's continuing rejection of jurisdiction in the Court of Appeals in these cases, by arguing that the interlocutory order here has no special antitrust significance. We cannot interpret Tidewater to allow the Court of Appeals, even where a Sec. 1292(b) certificate has been issued, to determine in its discretion whether the interlocutory order has substantial, insubstantial or no antitrust significance. The Court (409 U.S. at 169-172 & n.43, 93 S.Ct. at 419-420 & n.43) plainly indicates that the Act was intended to preserve to the Supreme Court alone the right to review all interlocutory orders and then only when there is an appeal from the final judgment. ". . . Congress enacted Sec. 2 of the Expediting Act in 1903 to withdraw all intermediate appellate jurisdiction in government civil antitrust cases." 409 U.S. at 154-155, 93 S.Ct. at 411 (emphasis in original; footnote omitted).
 
 
 10
 The purpose of the Expediting Act, as its very title indicates, is to eliminate piecemeal appeals and to bring to the Supreme Court expeditiously, the entire case without intervening appeals to Courts of Appeals. There is no suggestion and no holding of which we are aware that would give this Court jurisdiction to determine appealability on the basis of the trade regulatory significance of the appeal. There is a grave question as to whether the Expediting Act has been efficacious and it may well be that Courts of Appeals should have jurisdiction to hear appeals from the final judgment. However as Mr. Justice Marshall noted in Tidewater:
 
 
 11
 Yet, despite all of these criticisms, our personal views as to the wisdom of Sec. 2 are, of course, no basis for disregarding what we are bound to recognize as the plain and unaltered intent of Congress to require that appeals in government civil antitrust cases be taken only from final judgments and only to this Court. (409 U.S. at 170, 93 S.Ct. at 419).
 
 
 12
 We see no basis in the Act of Congress or in the holdings of the Supreme Court which bind us here, to engraft an exception based upon the character of the order. So long as it is interlocutory, and that cannot be disputed, we can have nothing to do with it. If the Supreme Court considers itself bound despite its misgivings as to the continuing viability of the Expediting Act, a fortiori this Court is inhibited from circumvention by artificial distinction. Whether the intermediate order involves a question of antitrust law or not, the appeal is piecemeal and delay is occasioned, the very vice the Expediting Act was intended to eliminate.
 
 
 13
 It is true that even though the Government may have initiated a civil antitrust action, if a dispute arises which is entirely between private parties and does not concern the Government, then the Expediting Act has been held not to bar an appeal to the Court of Appeals. Shenandoah Valley Broadcasting, Inc. v. ASCAP, 375 U.S. 39, 40, 84 S.Ct. 8, 11 L.Ed.2d 8 (1963); Standard Fruit & S. S. Co. v. United Fruit Co., 393 U.S. 406, 89 S.Ct. 684, 21 L.Ed.2d 634 (1969) (per curiam-See United States v. Standard Fruit & S. S. Co., 410 F.2d 553 (5th Cir.), cert. denied, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969)); United States v. ASCAP, 341 F.2d 1003, 1007 (2d Cir.), cert. denied, 382 U.S. 877, 86 S.Ct. 160, 15 L.Ed.2d 119 (1965). This recognized application of the Expediting Act was recently followed by the Supreme Court in Garrett Freightlines, Inc. v. United States, 405 U.S. 1035, 92 S.Ct. 1311, 31 L.Ed.2d 577 (1972). In that case, although the United States had commenced a civil antitrust action (United States v. Navajo Freight Lines, Inc., 339 F.Supp. 554 (D.Colo. 1972)), the district court dismissed on the ground that the Interstate Commerce Commission had primary jurisdiction. The United States did not appeal, but Garrett Freightlines, a named defendant in the district court but allied with the Government as an alleged unwilling victim of Navajo, took a direct appeal to the Supreme Court. The dismissal by the Court simply cited the Shenandoah case. The citation can only mean the Court reasoned that since the Government no longer considered itself aggrieved, the dispute was between private parties and hence an appeal lay to the Court of Appeals. The Shenandoah rule is not applicable here of course since this dispute below and on appeal continues to be between the United States and IBM.
 
 
 14
 The appellant is clearly foreclosed from appeal by the Expediting Act and it cannot escape by seeking a review through the device of the extraordinary relief provided by the All Writs Act, 28 U.S.C. Sec. 1651. This proposition was squarely established by the Supreme Court in United States Alkali Export Ass'n v. United States, 325 U.S. 196, 203, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945).
 
 
 15
 The writs may not be used as a substitute for an authorized appeal; and where, as here, the statutory scheme permits appellate review of interlocutory orders only on appeal from the final judgment, review by certiorari or other extraordinary writ is not permissible in the face of the plain indication of the legislative purpose to avoid piecemeal reviews.
 
 
 16
 The Alkali Export Ass'n holding was reaffirmed by the Supreme Court in the Tidewater opinion. 409 U.S. at 165 n. 25, 93 S.Ct. at 415 n. 25. The Court further noted: "application for the extraordinary writ must be made to this Court where 'sole appellate jurisdiction lies' in such cases." 409 U.S. at 160, 93 S.Ct. at 414.
 
 
 17
 It follows therefore that we have no more jurisdiction to review by way of mandamus than we do by appeal. Assuming that extraordinary relief is appropriate here, Tidewater clearly holds that application for the writ must be made to the Supreme Court.
 
 II
 
 18
 IBM argues further that in Cohen v. Beneficial Indus. Loan Co., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the Supreme Court indicated that an exception to the finality of judgment condition for appeal could be found "in that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."
 
 
 19
 We cannot agree that Cohen provides an exception for the Courts of Appeals from the exclusive jurisdiction of the Supreme Court in Expediting Act cases. Since the Supreme Court has rejected the concept that the Courts of Appeals have jurisdiction in those cases where a district judge certifies a controlling question of law under Sec. 1292(b), we are at a loss to understand why we would have jurisdiction where no certification takes place. Moreover we would be in the highly anomalous situation of having jurisdiction to review an intermediate order in a case where we had no jurisdiction over the final judgment, which is appealable only to the Supreme Court. This anomaly already noted in Tidewater (409 U.S. at 172-173, 93 S.Ct. at 421) with respect to 1292(b) cases, is all the more pronounced here.
 
 
 20
 Even if arguendo the Expediting Act is not applicable, we do not find that Cohen provides IBM succor here either by way of appeal or mandamus. Chief Judge Friendly recently expressed the attitude of this Circuit in Weight Watchers, Inc. v. Weight Watchers Int'l, Inc., 455 F.2d 770, 773 (2d Cir. 1972):
 
 
 21
 We have often indicated that Cohen must be kept within narrow bounds, lest this exception swallow the salutary "final judgment" rule. (citations omitted)
 
 
 22
 This Court has held that a discovery order involving the scope of an attorney's work product in the so-called "big case" is not appealable under the Cohen rule. American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277 (1967). Judge Feinberg's exhaustive opinion in that case reviewed the cases both pre and post-Cohen which in our view vindicate the policy of non-appealability of discovery orders. It is equally clear that mandamus cannot be utilized as a substitute for an appeal in these cases.
 
 
 23
 The contention that the claim of privilege enjoys a special status in considering a petition for an extraordinary writ has been expressly rejected by the United States Supreme Court in Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).
 
 
 24
 City of Los Angeles v. Williams, 438 F.2d 522 (9th Cir. 1971).[5]
 
 
 25
 Aside from this authority we do not find that this case fits within the criteria normally required for either Cohen or mandamus consideration. An important factor bearing upon the application of Cohen is whether a decision will settle a point once and for all, or will it open a flood of appeals. Weight Watchers, Inc. v. Weight Watchers Int'l, Inc., supra, 455 F.2d at 773.
 
 
 26
 Cohen did settle a collateral issue finally by upholding in a diversity action, the constitutionality and applicability of a New Jersey statute which provided that in a stockholder derivative action an unsuccessful plaintiff is liable for litigation expenses and is obligated to post a bond before commencing such action if his stockholdings fall below the statutory minimum. No such wide ranging issue is to be finally decided here. Judge Neville's order of April 18, 1972 states: "Inadvertence becomes of course a fact question and differs in each case." Control Data Corp. v. IBM, Doc. No. 3-68 Civ. 312, at 6 (D.Minn.). It is difficult to envisage a rule of law we could enunciate which could conveniently or properly calibrate all of the factors to be considered in determining whether the surrender of documents now deemed privileged, constituted a waiver. That issue has been determined here by Judge Edelstein and a review by us, even if permissible, could only spawn a spate of piecemeal appeals which would create intolerable delay.
 
 
 27
 Nor do we discern here any disruption of the administration of justice in the federal court system. Chief Judge Edelstein clearly had the power to direct disclosure under Fed.R.Civ.P. 37. This matter is pending before him and not before Judge Neville whose power was limited to the discovery in the CDC action then pending before him. That case has since been settled and in any event the Government was never a party to it.
 
 
 28
 IBM urges that its screening techniques were weakened when it removed its interceptor who was making final checks to eliminate the submission of privileged documents, in reliance upon the assurance of Judge Neville that he would not find any waiver of privilege. IBM further argues that the Government agreed to receive the microfilm data with the excised material eliminated and hence agreed to the non-waiver of privilege by IBM. Both arguments were considered in some detail in the initial opinion. (471 F.2d at 522-523 (Mulligan, J., dissenting)). Suffice it to say that the record does not establish clearly that all of the documents for which privilege is now claimed were surrendered in reliance on Judge Neville's ruling. Furthermore, we were not persuaded that the Government which agreed to receive the edited tapes thereby agreed to forego the position that the initial surrender to CDC constituted a waiver. In any event if any error was committed below with respect to these arguments it did not rise to the magnitude appropriate for either a Cohen appeal or the issuance of the extraordinary writ of mandamus.[6]
 
 
 29
 In sum we conclude that this appeal and petition for mandamus must be dismissed since we lack jurisdiction under the Expediting Act and in no event is there any basis to review this interlocutory order either by appeal or mandamus.
 
 MOORE, Circuit Judge (dissenting):
 
 30
 For generations the confidential nature of communications, written and/or oral, between attorney and client has been respected and preserved by the courts. A client is supposedly able to make a statement, confessing or implying guilt, to his attorney with the assurance of its sacrosanct character-even as to a priest in a confessional. When an agent of the government calls the attorney to the stand and asks, "Did not your client tell you he was guilty?", I would predict that an objection would be sustained. And it would matter not whether the government attempted to establish guilt by an attorney-client statement or by a series of letters of a confidential nature between client and attorney. The confidentiality violated in either situation is the same.[1]
 
 
 31
 The present appeal is not one from a decision of a court that has made a determination that appellant's letters and documents do not contain privileged matter. Of course separate appeals from separate decisions regarding privilege in each document should not be countenanced. But this is not such a situation. Rather, the facts presented indicate a peremptory command by a district court to a litigant to turn over attorney-client papers which apparently (for all that appears from the record) the court has not even undertaken to examine or pass upon as regards confidentiality.
 
 
 32
 The majority hold that "we have no jurisdiction to review the discovery order below either by appeal or by mandamus." They thus wash their hands of this deprivation of the age-old privilege by placing the blame on Congress. Congress, they say, passed the Expediting Act. The Act states that an appeal will lie only to the Supreme Court, and only from a final judgment. The pre-trial order appealed from is not a final judgment. Ergo, since we are not the Supreme Court and since this is an interlocutory proceeding, no appeal-either to this Court or to the Supreme Court. Perfect logic-so perfect, in fact, that it misses the point completely. The majority, in effect, hold that Congress, in enacting the Expediting Act, gave uncontrolled power to a district court to take equally uncontrolled action which, even if it should violate the constitutionally and/or precedentially protected rights of a party, cannot be reviewed by any court in the land.[2] Quite obviously, Congress could have intended no such thing.
 
 
 33
 As I read the brief legislative history accompanying passage of the Expediting Act, the statute was designed "to expedite litigation of great and general importance," and not to extinguish, without any right of appeal, rights as fundamental as the attorney-client privilege. In introducing the bill on the Senate Floor, Senator Fairbanks stated:
 
 
 34
 The far-reaching importance of the cases arising under antitrust laws now upon the statute books or hereafter to be enacted, and the general public interest therein, are such that every reasonable means should be provided for speeding litigation. It is the purpose of the bill to expedite litigation of great and general importance. It has no other object. (Emphasis added.)[3]
 
 
 35
 Surely, Congress did not intend, for the sake of expedition, that this Court should regard itself powerless to intervene in the procedural injustice presented by this appeal, in a matter completely unrelated to the antitrust merits of the case, and one which touches not only the rights of a private party, but also this Court's supervisory power over the administration of justice in this Circuit. I cannot believe that such a result was intended when Congress decided to expedite antitrust litigation in 1903.
 
 
 36
 If such a result is possible under the Expediting Act, however, I would add my voice to those of the esteemed chorus that has urged Congressional re-appraisal of this statute in light of its insidious operation. In United States v. Singer Mfg. Co., 374 U.S. 174, 175, n. 1, 83 S.Ct. 1773, 1774, 10 L.Ed.2d 823 (1963), Mr. Justice Clark, writing for the Court, said:
 
 
 37
 Whatever may have been the wisdom of the Expediting Act in providing direct appeals in antitrust cases at the time of its enactment in 1903, time has proven it unsatisfactory. [citation omitted] Direct appeals not only place a great burden on the [Supreme] Court but also deprive us of the valuable assistance of the Courts of Appeals.
 
 
 38
 Writing in dissent, Mr. Justice Harlan voiced a similar opinion of the Expediting Act:
 
 
 39
 [I]t is gratifying to observe the Court's recognition of the fact that the requirement of direct review in cases like this has become an anachronism in light of the modern work load of this Court. * * * [S]ee also the separate opinion of this writer in Brown Shoe Co. v. United States, 370 U.S. 294, 357, 364-365 [82 S.Ct. 1502, 1542, 1546, 1547, 8 L.Ed.2d 510]. The final outcome of this case might indeed have been different had this Court had "the valuable assistance of the Courts of Appeals" * * *. 374 U.S. at 202, 83 S.Ct. at 1788.
 
 
 40
 In the Brown Shoe case, supra, Justice Harlan, in a separate opinion had said:
 
 
 41
 [U]nder modern conditions it may well be doubted whether direct review of such cases by this Court truly serves the purpose of expedition which underlay the original passage of the Expediting Act. I venture to predict that a critical reappraisal of the problem would lead to the conclusion that "expedition" and also, overall, more satisfactory appellate review would be achieved in these cases were primary appellate jurisdiction returned to the Courts of Appeals * * *. 370 U.S. at 364-365, 82 S.Ct. 1502.[4]
 
 
 42
 Notwithstanding the strictures of the Expediting Act, however, and the mounting criticism directed at its usefulness, I continue to adhere to the rationale of the panel opinion in this case, see IBM v. United States, 471 F.2d 507 (2d Cir. 1972), and to "the hypothesis that a blanket order as broad and sweeping as the order before us ought to receive appellate review before IBM is irrevocably deprived of its right to claim the attorney-client privilege," id. at 512. In short, I would hold that jurisdiction is conferred upon this Court by operation of both 28 U.S.C. Sec. 1291 and 28 U.S.C. Sec. 1651. See discussion in 471 F.2d at 512-517.
 
 
 43
 Taken literally, the majority's "no jurisdiction" pronouncement means that, from the moment a complaint is served in a government civil antitrust action, no party defendant, no subpoenaed witness, no stranger to the proceeding called upon to produce privileged papers, or no attorney sought to be questioned as to confidential advice which he gave his client, could enter any courthouse in the country to prevent the invasion of his most personal constitutional rights or a violation of rights well established by law.
 
 
 44
 As noted in the panel opinion, a single example should suffice to illustrate the reductio ad absurdum of the majority position: The custodian of the 1,200 allegedly privileged papers in the instant case disregards (with or without advice of counsel) the court order to produce. A contempt order of commitment then ensues. The jail door closes. The Supreme Court has said that it will review only the final judgment so that it can pass upon important questions of antitrust law. But the order of incarceration has nothing to do with antitrust law. It is entirely ancillary or collateral to the "mainstream" of the antitrust litigation. The victim has no particular interest in the refinements of that field of the law. All that he desires is some court to which he can appeal the unlawfulness of his confinement. I seriously doubt that the Supreme Court would interpret its recent decision in Tidewater Oil Co. v. United States, 409 U.S. 151, 93 S.Ct. 408 (1972), as requiring the contemnor to languish in jail for five or more years with the dubiously cheerful knowledge that due process of law eventually would be accorded him when the antitrust appeal has finally been decided.
 
 
 45
 Since the majority has based their decision solely upon the ground of lack of jurisdiction to right any wrong in this particular type of suit, no purpose will be served by reiterating the facts as discussed in the panel opinion, see 471 F.2d at 508-511, facts which in my opinion clearly establish non-waiver of the attorney-client privilege. And it is clear that non-waiver and irreparable injury must be assumed in approaching the problem. See 471 F.2d at 509.
 
 
 46
 The majority regard this proceeding as an interlocutory appeal in a government civil antitrust case. Except for the circumstance that the order was made in an antitrust case, however, it has nothing whatsoever to do with antitrust law, nor does it relate in any way to the antitrust issues raised in the main action. In the language of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the case giving rise to an exception to the general rule that interlocutory orders are not appealable, the pretrial order here appealed from is quite "separable from and collateral to" rights asserted in the main action. Further analogy to Cohen is found in the facts presented because once the appellant (IBM) has been forced to disclose the privileged documents, "it will be too late effectively to review the * * * order and the rights conferred * * * will have been lost, probably irreparably." 337 U.S. at 546, 69 S.Ct. at 1225.
 
 
 47
 The courts have consistently recognized as a matter of law that "appeal after disclosure of the privileged communication is an inadequate remedy * * *." Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487, 492 (7th Cir. 1970), aff'd mem. by equally divided Court, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433, reh. denied, 401 U.S. 950, 91 S.Ct. 917, 28 L.Ed.2d 234 (1971). And as noted in Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 997 (10th Cir.), cert. denied, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965), "[t]he practical effect of the order [requiring disclosure of trade secrets] will be irreparable by any subsequent appeal." This only states the obvious and it would be folly to reason that appellant's right would ultimately be protected by some appeal (possibly five years hence) from some "final judgment".
 
 
 48
 In view of my belief that this proceeding is quite divorced from the situation which Congress had in mind in enacting the Expediting Act, I cannot believe that the Supreme Court would say that an individual or a corporation can be deprived of fundamental rights without judicial review by some appropriate court. Recourse cannot be had to the Supreme Court because this is not a "final judgment" under the Expediting Act. But a court of appeals would be an appropriate way station for less than final judgment review, as noted supra by Justices Harlan and Clark.
 
 
 49
 Exhaustive review of the many decisions cited and analyzed in Tidewater Oil Co., supra, and of the pertinent procedural statute does not lead me to the conclusion reached by the majority, namely, that the courts are powerless to exercise their power to rectify miscarriages of justice. If the courts were ingenious enough to afford relief in Cohen, supra, they should be equally ingenious twenty-four years later, during a period in which courts have shown extraordinary precocity in accepting jurisdiction and in fashioning relief to meet the particular situations presented to them. In my opinion, this is such a situation and I regret that the majority has chosen to bar the door to a litigant's meritorious plea for relief. For this reason, I continue in my firm belief that the two paths on which I was joined by my Brother Timbers in the panel opinion, see 471 F.2d at 512-517, both lead to the very necessary finding that this Court has jurisdiction to hear this appeal and petition for mandamus.
 
 
 50
 Accordingly, I would (1) entertain jurisdiction, (2) vacate Pretrial Order No. 5 and (3) provide for a judicial determination of the privileged nature of the documents in question, with delivery thereafter to the government of such documents as may be determined not to be privileged.
 
 TIMBERS, Circuit Judge (dissenting):
 
 51
 I join Judge Moore in dissenting from the en banc majority's dismissal of the appeal and the petition for a writ of mandamus. I renew my concurrence in Judge Moore's panel majority opinion, 471 F.2d 507, 508-17 (2 Cir. 1972), and I concur in his en banc dissenting opinion filed today.
 
 
 52
 In view of certain unique aspects of this case in its present posture, I think it is important in the public interest briefly to attempt to respond to two essential questions: (1) How did we get here? and (2) Where do we go from here?
 
 I.
 
 53
 HOW DID WE GET HERE?
 
 
 54
 Today's en banc majority decision results in a turnabout of the 2-1 panel decision of December 19, 1972. Judge Mulligan's panel dissenting opinion, joined now by Judges Hays, Feinberg and Oakes, becomes the en banc majority opinion by a 4-2 vote. Judge Moore's panel majority opinion, concurred in by Judge Timbers, becomes now the en banc dissenting opinion. Thus the law of the Circuit on the substantial issues of unusual importance here involved is being determined by four active judges on a Court for which Congress has provided a nine-judge complement. 28 U.S.C. Sec. 44(a) (1970).
 
 
 55
 This comes about because there has been a vacancy on this nine-judge Court for a year and a half, and three of the eight active judges have abstained by reason of disqualification from voting at any stage of this en banc proceeding. In order to en banc this case, therefore, the affirmative vote of each of the five eligible active judges was required by 28 U.S.C. Sec. 46(c) (1970) and Fed.R.App.P. 35(a).[1] In determining what constitutes a "majority of the circuit judges who are in regular active service" for purposes of en bancing a case, judges who by reason of disqualification are excluded from voting whether to en banc nevertheless are included in determining what constitutes a majority. Zahn v. International Paper Co., 469 F.2d 1033, 1042 (2 Cir. 1972) (Timbers, J., dissenting), cert. granted, 410 U.S. 925 (1973). See 28 U.S.C. Sec. 46(d) (1970).
 
 
 56
 In stating these facts of en banc life in our Court, I am not complaining about the en banc procedure in compliance with the statute and the rule which has gotten us where we are in the instant case.[2] I do think it is of the utmost importance, however, that it should be made crystal clear for the benefit of all concerned just how the en banc procedure has operated-and particularly how it has been permitted to operate-to bring about today's en banc decision in this case.
 
 
 57
 This is particularly so in view of an opinion in our Court earlier this Term in Zahn v. International Paper Co., supra. There, in seeking to justify the anomalous en banc result by which a minority of three of the active judges voted to deny the en banc reconsideration of one of the more pressing issues of our day which four of the active judges had voted to grant, one of our most learned and esteemed colleagues had this to say in his counter-dissenting opinion:
 
 
 58
 "The issue here is whether four judges of a court with a nine-judge complement may force an en banc reconsideration that could result in the law of the circuit being determined by less than a majority of the court. If less than a majority could determine the law of the circuit, the purpose of en banc procedure would be eroded. Carried to its logical extreme it would mean that in a case where only five members of a nine-member court were available (either because of vacancies, disqualifications, illnesses or the like) the law of the circuit would be determined by the vote of only three." (emphasis added) 469 F.2d at 1041 (counter-dissenting opinion of Mansfield, J.).
 
 
 59
 In the wake of our learned colleague's prediction of the dire consequences of en banc determination "in a case where only five members of a nine-member court were available", two events occurred within less than a week of each other: (1) the Supreme Court on February 20, 1973 granted certiorari in Zahn, 410 U.S. 925, thus laying at rest any notion that the issue which four of the active judges of this Court had voted to reconsider en banc was not a substantial question of unusual importance; and (2) an order was entered in our Court on February 14, 1973 granting reconsideration en banc in the instant case-"a case where only five members of a nine-member court were available . . . because of [a vacancy and] disqualifications . . . ." Such clairvoyance on the part of our learned colleague marks him as the truly worthy namesake of one of the most notable jurists of all time.
 
 
 60
 Nevertheless, I emphatically disagreed at the time with my Brother Mansfield's attempt in Zahn to justify the denial of en banc reconsideration of such a substantial question of unusual importance despite the 4-3 vote by the active judges of this Court in favor of en banc reconsideration. 469 F.2d at 1041-42.[3] And I still do. Otherwise there would be no en banc reconsideration of the important issues in the instant case.
 
 
 61
 The moral of the en banc procedure in this case, in my view, is that it is of less importance that the vote of a single active judge could have blocked en banc reconsideration than that each active judge was willing to vote in favor of en banc, thus assuring that the will of the other four to reconsider the case en banc was not thwarted.
 
 II.
 
 62
 WHERE DO WE GO FROM HERE?
 
 
 63
 The one thing upon which we all agree is that the time has come to draw down the curtain upon any further opinions in this case in this Court. Able and forceful opinions have been written by the principals at both tiers here-Judge Moore's panel majority opinion and his en banc dissenting opinion; Judge Mulligan's panel dissenting opinion and his en banc majority opinion. I have no desire, even if there were room, to start another tier on the merits. Suffice it to say that I concur in both of Judge Moore's opinions.
 
 
 64
 What baffles me, however-and perhaps others as well-is where do we go from here?
 
 
 65
 The dilemma posed by today's en banc majority holding-assuming arguendo its correctness-is how, if ever, can review be obtained of a district court's peremptory order in a government civil antitrust action directing disclosure of privileged communications between attorney and client if, the district court itself never having examined the documents, such disclosure is to be compelled prior to review of the order?
 
 
 66
 The majority's position, briefly stated, is that the Expediting Act ousts our Court of jurisdiction and, since the order is not final, it is not appealable to either the Supreme Court or ours; and, aside from the Expediting Act, we have no power to review the order either by appeal or mandamus. In short, the majority says in effect that this order falls into a no-man's-land that immunizes it forever from effective review by any court.
 
 
 67
 While I disagree with this conclusion of frustration-for the reasons ably set forth in Judge Moore's opinions-the majority's position, if accepted, would appear to compel resort to one of the following courses:
 
 
 68
 (1) Contempt Adjudication
 
 
 69
 One way to obtain prompt appellate review of the basic claim of attorney-client privilege would be for an appropriate officer or employee of IBM respectfully to refuse to comply with the district court's Pretrial Order No. 5. Direct appeal could then be taken to this Court from the district court's ensuing civil contempt order. While this would result in prompt adjudication of the claim of privilege, the author of this opinion surely can take judicial notice that such course of procedure would be neither acceptable nor pleasant, especially from the standpoint of the alleged contemnor even when represented by distinguished-and effective-counsel.[4]
 
 
 70
 (2) Congressional Amendment of Expediting Act
 
 
 71
 There seems to be a consensus that during the three score years and ten that the Expediting Act has been on the books it has outlived its original purpose and that it is high time that Congress re-examine the statute with a view to providing for direct appeals to the courts of appeal rather than to the Supreme Court in antitrust cases. Both of today's principal en banc opinions agree. ". . . I would add my voice to those of the esteemed chorus that has urged Congressional re-appraisal of this statute in light of its insidious operation." 480 F.2d at 300, and authorities cited. (dissenting opinion of Moore, J.). "There is a grave question as to whether the Expediting Act has been efficacious . . . ." 480 F.2d at 296 (majority opinion of Mulligan, J.).
 
 
 72
 Moreover, as government counsel informed us at the en banc argument of this case, the Antitrust Division of the Department of Justice is continuing to press for legislation to permit appeals from certain types of interlocutory orders in government antitrust actions. See also United States v. International Telephone and Telegraph Corp., 306 F. Supp. 766, 798 n. 98 (D.Conn.1969), appeal dismissed, 404 U.S. 801 (1971).
 
 
 73
 But, as desirable as such Congressional relief surely would be, it will come too late, if at all, to provide any solace for the beleaguered petitioner-appellant before us.
 
 
 74
 (3) Mandamus Review by Supreme Court
 
 
 75
 The only remaining possible solution to the dilemma posed above would appear to be that indicated by Judge Mulligan in his en banc majority opinion, 480 F.2d at 297, in referring to the Supreme Court's statement in its recent opinion in Tidewater Oil Co. v. United States, 409 U.S. 151, 160 (1972), that "application for the extraordinary writ must be made to this Court where 'sole appellate jurisdiction lies' in [government civil antitrust cases]."
 
 
 76
 For the reasons stated above, together with those more fully set forth in Judge Moore's opinions, I respectfully dissent from the majority's dismissal of the appeal and the petition for a writ of mandamus.
 
 
 
 [1]
 Since the time the opinions of the panel which initially considered this appeal were filed on December 19, 1972, the CDC case has been settled. Still pending are two other actions, Greyhound Computer Corp. v. IBM on appeal in the Ninth Circuit after trial where judgment was entered for IBM. (See 1972 CCH Trade Cas. p 74,205 (D.Ariz. July 10, 1972)). The Telex Corp. v. IBM action has been remanded to the Northern District of Oklahoma for trial. (En Banc Memorandum for Petitioner-Appellant at 7 n.*)
 
 
 [2]
 15 U.S.C. Sec. 29 provides:
 In every civil action brought in any district court of the United States under any of said [antitrust] Acts, wherein the United States is complainant, an appeal from the final judgment of the district court will lie only to the Supreme Court.
 
 
 [3]
 See Tidewater Oil Co. v. United States, 409 U.S. at 160-161, 93 S.Ct. at 414-415, 34 L.Ed.2d 375 (Dec. 6, 1972); Brown Shoe Co. v. United States, 370 U.S. 294, 305 n. 9, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962); the cases so holding are listed in the exhaustive opinion of the First Circuit in United States v. Cities Serv. Co., 410 F.2d 662, 665 n. 5 (1969). Other cases are noted in Annot., 10 A.L.R. Fed. 607, 621-624 (1972)
 
 
 [4]
 Atlantic City Elec. Co. v. General Elec. Co., 337 F.2d 844 (2d Cir. 1964). In his dissenting opinion in American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277, 285 n. 2 (2d Cir. 1967), Chief Judge Lumbard commented: "An order granting or denying discovery could rarely, if ever, satisfy this requirement," i. e., that an immediate appeal would materially advance the conduct of the litigation
 
 
 [5]
 The Court expressly rejected its previous holding in Continental Oil Co. v. United States, 330 F.2d 347 (9th Cir. 1964), still relied upon by IBM in its en banc memorandum
 
 
 [6]
 As this Court recently pointed out in United States v. DiStefano, 464 F.2d 845, 850 (1972), where the district judge has the power to make a determination under the Federal Rules,
 Will v. United States, 389 U.S. 90, 95, 104, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), makes plain that mere error, even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice to support issuance of the writ. "While the courts have never confined themselves to an arbitrary and technical definition of 'jurisdiction,' it is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy . . Mandamus, it must be remembered, does not 'run the gauntlet of reversible errors.' Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed.2d 106 (1953). Its office is not to 'control the decision of the trial court,' but rather merely to confine the lower court to the sphere of its discretionary power. Id., at 383, 74 S.Ct. 148." . . . The Court had said long before that the all-writs statute, 28 U.S.C. Sec. 1651(a), cannot "be availed of to correct a mere error in the exercise of conceded judicial power," but can be used only "when a court has no judicial power to do what it purports to do-when its action is not mere error but usurpation of power . . ." De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945).
 See also S.E.C. v. Stewart, 476 F.2d 755 (2d Cir., March 16, 1973).
 
 
 [1]
 See Radiant Burners, Inc. v. American Gas Ass'n, 320 F.2d 314, 322-23 (7th Cir.), cert. denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963). See generally, Comment, Corporations and the Attorney-Client Privilege, 12 B.C.Ind. & Com.L.Rev. 1200 (1971), and Weinschel, Corporate Employee Interviews and the Attorney-Client Privilege, 12 B.C.Ind. & Com.L.Rev. 873 (1971)
 
 
 [2]
 The Expediting Act, 15 U.S.C. Sec. 29, provides that:
 In every civil action brought in any district court of the United States under any of said [antitrust] Acts, wherein the United States is complainant, an appeal from the final judgment of the district court will lie only to the Supreme Court.
 The Act not only precludes an appeal to a court of appeals but also, since appeal lies only from the final judgment of the district court, it precludes any interlocutory appeal to either a court of appeals or the Supreme Court. See United States v. California Coop. Canneries, 279 U.S. 553, 558, 49 S.Ct. 423, 73 L.Ed. 838 (1929).
 
 
 [3]
 36 Cong.Rec. 1679 (1903) (remarks of Senator Fairbanks)
 
 
 [4]
 See also, Comment, Direct Appeals in Antitrust Cases, 81 Harv.L.Rev. 1558 (1968); Comment, The Antitrust Expediting Act-A Critical Reappraisal, 63 Mich.L.Rev. 1240 (1965); Gessell, A Much Needed Reform-Repeal the Expediting Act for Antitrust Cases, 1961 N.Y. State Bar Ass'n Antitrust L.Sym. 98 (CCH)
 
 
 [1]
 28 U.S.C. Sec. 46(c) (1970) provides in relevant part that a rehearing before the court in banc may be ordered by "a majority of the circuit judges of the circuit who are in regular active service"; that "[a] court in banc shall consist of all circuit judges in regular active service"; and that "[a] circuit judge of the circuit who has retired from regular active service shall also be competent to sit as a judge of the court in banc in the rehearing . . . if he sat in the court . . . at the original hearing thereof." By virtue of this last clause, Judge Moore, who has retired from regular active service, has participated as a member of the en banc court so far as today's en banc decision on the merits is concerned, although he was not eligible to vote on whether to en banc the case. See Zahn v. International Paper Co., 469 F.2d 1033, 1042 n. 1 (2 Cir. 1972) (Timbers, J., dissenting), cert. granted, 410 U.S. 925 (1973)
 Fed.R.App.P. 35(a) provides in relevant part that "[a] majority of the circuit judges who are in regular active service may order that an appeal or other proceeding be . . . reheard by the court of appeals in banc."
 
 
 [2]
 In other cases during the 18 month period since November 6, 1971 when our Court has been undermanned and has consisted of only eight active judges, I have been critical of the manner in which the en banc procedure has been permitted to deny en banc reconsideration of substantial questions of unusual importance despite the votes of four of the active judges in favor of en banc. See, e. g., Scenic Hudson Preservation Conference v. FPC, 453 F.2d 463, 494 (2 Cir. 1971) (en banc denied, 4-4), cert. denied, 407 U.S. 926 (1972); Zahn v. International Paper Co., supra, 469 F.2d at 1040-42 (en banc denied, 4-3, i. e. 4 in favor of en banc, 3 against); Boraas v. Village of Belle Terre, 476 F.2d 806, 825 & n. 1 (2 Cir. 1973) (en banc denied, 4-4)
 In the instant case, by contrast with the above, while the negative vote of a single one of the five active judges could have blocked the reconsideration en banc which the other four wanted, that negative vote was never cast. That is how we got here.
 
 
 [3]
 For an unusually perceptive criticism of the en banc procedure in Zahn, see Note, En Banc Petition-Decisive Presence Of A Disqualified Judge, 47 St. John's L. Rev. 345 (1972) (part of Second Circuit Note [1971 Term], id. at 222), preceded by a Foreword by the author of today's en banc majority opinion in the instant case, Mulligan, The Goring Of The Judiciary's Oxen, id. at 219
 
 
 [4]
 See Appeal of the United States Securities and Exchange Commission, 226 F. 2d 501 (6 Cir. 1955) (contemnor represented by then Assistant Attorney General (now Chief Justice) Warren E. Burger, 226 F.2d at 501)