RONSON CORPORATION,
Plaintiff-Appellant,

v.

LIQUIFIN AKTIENGESELLSCHAFT,
Defendant-Appellee,

and

Liquigas S.p.A. et al., Defendants,

Louis V. Aronson II et al.,
Counterclaim-Defendants.

No. 361, Docket 74–2161.

United States Court of Appeals,
Second Circuit.

Argued Oct. 16, 1974.

Decided Dec. 12, 1974.

Milton S. Gould, New York City (Shea Gould, Climenko & Kramer, Michael Lesch, New York City, of counsel), for plaintiff-appellant.

Donald J. Zoeller, New York City (Mudge, Rose, Guthrie & Alexander, Milton Black, John B. Sherman, P. Jay Wilker, New York City, Douglas J. Danzig, of counsel), for defendant-appellee.

Before DANAHER *, FEINBERG and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by Ronson Corporation (Ronson) from an order of the United States District Court for the Southern District of New York, Hon. Charles H. Tenney, District Judge, dated August 21, 1974, which granted certain relief to Li-

* Senior Circuit Judge of the District of Columbia, sitting by designation.

quifin Aktiengesellschaft (Liquifin), the defendant in an action commenced by Ronson on June 7, 1974.

Liquifin, a Lichtenstein corporation, is the largest stockholder of Ronson, a New Jersey corporation, owning 36.4% of its outstanding common stock. The Ronson action sought to enjoin and set aside Liquifin's use of proxies which had been solicited during a proxy fight for control of Ronson. A host of violations of the federal securities laws were charged by Ronson in the complaint and by Liquifin in a counterclaim.

The annual meeting of Ronson was scheduled for June 13, 1974, at which time the shareholders would elect nine directors to the Ronson board. Although each side had objected to the voting of certain proxies by the other, it was agreed between the warring factions that the annual meeting would take place as scheduled. The parties entered into a "ground rules agreement," which contained Rules and Presumptions concerning the validity of proxies, and which provided for the appointment of two inspectors from the Corporation Trust Company of New York who were to conduct the election in Newark, New Jersey pursuant to the agreement.

Prior to the meeting, Ronson had announced that it would propose a ticket of only seven candidates for the board, since it believed that Liquifin was entitled to two board members. Liquifin nominated nine candidates. The election was held on June 13th as scheduled, and the annual meeting was adjourned pending the issuance of a final report and certification by Messrs. Mead and Bloom, the inspectors. On June 20, 1974, Mead and Bloom privately revealed the unofficial results to Ronson and Liquifin. All of the Ronson candidates were elected, but two of them received 138 votes less than the other five. Two of the Liquifin nominees, Malone and Markley, received 138 votes more than the other Liquifin candidates. The difference in the respective votes among candidates on each side was accounted for by the fact that two independent shareholders had split their ballot, casting 138 votes for each of five of the Ronson candidates and 138 votes for Malone and Markley. This unofficial tally therefore disclosed that the entire management slate and two Liquifin candidates, Malone and Markley, would fill the nine vacancies on the board.

After the inspectors revealed the tentative results of the election, a schedule for future events was agreed upon. Pursuant to the schedule, Mead and Bloom heard challenges to ballots and proxies by both sides on July 1st, and announced decisions on those challenges on July 2nd. A tentative report of the inspectors was scheduled to be issued on July 8th. However, on July 5th—after the results of the election became known but before the issuance of the report— Liquifin notified Mead and Bloom that it wished to have its shares considered as having been cast in such a way as to bring about the election of two other Liquifin nominees, Messrs. Marfuggi and Zoeller, in place of Malone and Markley. Ronson objected to this plan. On July 8th, Mead and Bloom issued their inspectors' report, which showed that the Ronson board consisted of the seven management candidates and Messrs. Malone and Markley.

On July 9, 1974, the parties appeared before Judge Tenney on a motion by Liquifin to compel Mead and Bloom to count Liquifin's ballot in accordance with its request of July 5th, to restrain the issuance by the inspectors of the July 8th report as a final and definitive report of the election results, and to compel the inspectors to issue a final report designating Marfuggi and Zoeller as the Liquifin representatives on the board. On the same day, Messrs. Malone and Markley indicated a desire to be replaced by Marfuggi and Zoeller.

On July 9, Judge Tenney permitted the issuance of the July 8th report as a final report with respect to the seven management nominees. In a memorandum opinion and order dated August 21, Judge Tenney found in favor of Liquifin concerning the other two board members. It is from this order that Ronson appeals.

■ The initial and crucial question before us is whether the order in issue is appealable. Ronson argues that, under 28 U.S.C. § 1292(a)(1), courts of appeals have jurisdiction of appeals from interlocutory orders granting injunctions. It argues that the order is injunctive since the Liquifin motion sought an order enjoining Ronson and the inspectors from publishing the inspectors' report as the final result of the annual meeting and compelling Ronson and the inspectors to issue a report reflecting the election of Marfuggi and Zoeller. However, in International Products Corp. v. Koons, 325 F.2d 403, 406 (2d Cir. 1963), Judge Friendly, writing for the court, construed section 1292(a)(1) to apply only to "injunctions which give or aid in giving some or all of the substantive relief sought by a complaint . . . and not as including restraints or directions in orders concerning the conduct of the parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial." (footnote omitted). See Siebert v. Great Northern Dev. Co., 494 F.2d 510, 511 (5th Cir. 1974) (*per curiam*); Weight Watchers, Inc. v. Weight Watchers Int'l, Inc., 455 F.2d 770, 774 (2d Cir. 1972); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1208 (2d Cir. 1970); Stricklin v. Regents of Univ. of Wisconsin, 420 F.2d 1257, 1259 (7th Cir. 1970); Miller v. United States, 403 F.2d 77, 78 (2d Cir. 1968); Fleischer v. Phillips, 264 F.2d 515, 516 (2d Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959). The rule has also been stated as follows: "[A]n order incidental to a pending action that does not grant part or all of the ultimate injunctive relief sought is not an injunction, . . . notwithstanding the fact that it purports to enjoin." 9 J. Moore, Federal Practice ¶ 110.20 [1], at 233 (2d ed. 1973) (footnote omitted). Since the order here does not grant part or all of the ultimate relief sought in this action, which alleges numerous violations of the federal securities laws regulating proxy solicitations and related matters, the appeal cannot be grounded on section 1292(a)(1).[1]

Here, the appellees in their counterclaims sought injunctive relief and damages, urging that the Ronson proxy material for the 1974 annual meeting was false and misleading. The election was held in any event on the basis of the agreement referred to earlier because of the expense involved in postponement. The present contretemps is wholly independent of and apart from any issues raised in the complaint or the counterclaims. In fact, the only legal issue raised below—the question of the right of stockholders to change their vote—is a question to be determined by New Jersey State law and has no relevance to the alleged violations of federal securities laws which have prompted the bitter contest in the district court.

■ Ronson argues further that Judge Tenney's order is "final" within 28 U.S.C. § 1291 under the so-called *Cohen* rule, Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The *Cohen* rule permits an appeal if the order appealed from finally determines a claim which is "separable from, and collateral to" rights asserted in the action; which presents a "serious and unsettled question"; and which cannot await final judgment since at that time "it will be too late effectively to review the present order, and the rights conferred . . . will have been lost, probably irreparably." 337 U.S. at 546–547, 69 S.Ct. at 1225.

While the order here is, in light of the circumstances noted above, collateral, we do not think that the other *Cohen* criteria are met. In deciding whether there is a serious and unsettled question involved in the appeal, we have stressed

---

1. We do not consider Belknap v. Leary, 427 F.2d 496 (2d Cir. 1970) to be contrary. There, the lower court issued an order restraining the Police Commissioner and other police officials from failing to protect participants in a lawful demonstration. This court considered the order, in form a temporary restraining order, to be essentially affirmative and therefore an injunction within section 1292(a)(1). There, however, the injunction apparently involved the ultimate relief sought in the underlying action.

that our determination must "settle the matter not simply for the case in hand but for many others. . . .." Donlon Indus., Inc. v. Forte, 402 F.2d 935, 937 (2d Cir. 1968), or must "settle a point once and for all, . . . " Weight Watchers, Inc. v. Weight Watchers Int'l, Inc., *supra*, 455 F.2d at 773. See also International Business Machines Corp. v. United States, 480 F.2d 293, 298 (2d Cir. 1973) (*en banc*); American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277, 280–282 (2d Cir. 1967). There is no issue of such wide-ranging importance here. The powers of the election inspectors depend upon the construction of a New Jersey statute, and the ground rules agreement makes its interpretation depend upon the law of New Jersey. Aside from the fact that no question of federal securities law is posed and that the state law involved is that of a state outside the circuit, the factual setting here is so unique that no case in point has been unearthed by either party. An opinion here would not solve anything once and for all, except the highly unique case before us. With our appellate caseload at an all-time high, we see no point in adding to it, and, in fact, under section 1291 we have no choice but to decline to do so.[2]

Of course, once this case is finally decided in the district court and appealed, it will probably be too late to review Judge Tenney's order seating Marfuggi and Zoeller since by then another election will have come and gone. But this does not end the inquiry into the third part of the *Cohen* test. Here it is difficult to understand how Ronson is irreparably damaged by having these men on its board. Ronson continues to control the board, and Liquifin, as understood and intended by the parties, has two representatives on the board. Ronson has lost no power over corporate affairs beyond that which it wished to surrender. The determination on the merits as to the validity of the proxy solicitation practices of both sides will be ultimately determinative of the entire issue as to the proper composition of the board. Ronson now claims that, since Zoeller is counsel to Liquifin, his presence on the board constitutes a conflict of interest and creates irreparable harm to it. This again is a question of New Jersey law, and, in any event, we feel it should be brought before Judge Tenney, who found specifically that the election created no prejudice to Ronson,[3] but did not consider the belated conflict of interest claim.

In the event that Ronson succeeds on the merits in this litigation, then there may be no Liquifin directors. If Liquifin succeeds on the merits, then there may be no Ronson directors. There is at this juncture no point in an appellate court making a determination which may well be shortly mooted. The policy of discouraging piecemeal and fragmentary appeals has recently been emphasized by the Supreme Court. In United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974), the Court stated:

> The finality requirement of 28 U.S.C. § 1291 embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals. . . . This requirement ordinarily promotes judicial efficiency and hastens the ultimate termination of litigation.

See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 2149–2150, 40 L.Ed.2d 732 (1974).

This policy compels the dismissal of this appeal.

Appeal dismissed.

2. We do not suggest that the district court should abstain from hearing and determining the state issues which are involved. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, state law issues are particularly inappropriate vehicles for piecemeal appeal when we are limited by the *Cohen* rule to considering only that small class of .appeals which will settle the law once and for all.

3. This finding was made by Judge Tenney in the absence of a contention by Ronson, urged for the first time before us, that it suffers injury from the presence of Liquifin's counsel on the Ronson board.